UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 1:23-CR-10186-ADB |
| TREVON BELL, a/k/a "Moula," | ) | |
| | ) | |
| Defendant | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant Trevon Bell was a leading member of the Heath Street Gang, one of the most violent street gangs in Boston. Defendant actively promoted the gang's violence through music recordings and videos in which he bragged about such violence and demeaned and threatened rival gangs, and was a primary recruiter of younger individuals to join the gang. Then, as COVID-19 disrupted everyday life, causing illness, death and economic distress, Defendant took advantage of the pandemic to divert emergency federal relief funds for the gang's use and facilitation of criminal activities, ultimately causing the disbursement of over $600,000 in fraudulently obtained funds. Indeed, an astonishing illustration of his brazenness, he openly boasted in one song that he "bought 100 guns with this PUA."[1]

On June 3, 2026, Defendant pled guilty to conspiracy to conduct enterprise affairs through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d). Dkt. 553. For the reasons set forth herein, the government recommends a sentence of 46 months followed by 36 months of supervised release. Defendant's callous conduct mandates the recommended sentence, which is necessary to protect the public and deter Defendant and others from similar conduct in the future, and is sufficient but not greater than necessary to achieve the goals of sentencing.

---

[1] As detailed herein, this referred to Pandemic Unemployment Assistance ("PUA") funds.

## I. DEFENDANT'S CRIMINAL CONDUCT

### a. *Violent Crimes*

The Heath Street Gang originated in what is now the Mildred C. Hailey Apartments (the "Development"), a housing development in Jamaica Plain. PSR ¶ 9. The gang continues to operate and engage in a variety of crimes, including violent crimes such as murders, attempted murders, and shootings; drug trafficking; robberies; and financial crimes. *See id.* The Heath Street Gang's criminal activities have had a particularly negative impact on the members of the public living in the Development through the gang's violence (including violent/threatening conduct on site at the Development as well as retaliatory attacks/shootings from rival street gangs targeting the Development), drug dealing (both within the Development and in the nearby area), and the active recruitment of children from the Development into the gang. *Id.* ¶ 16.

This recruitment of juveniles to join the gang and actively participate in its crimes and chain of retaliatory violence, including murders and shootings, is one of the most insidious aspects of the Heath Street Gang. *See, e.g.*, *id.* ¶¶ 16-19. Defendant was a primary recruiter and facilitator of such. For example, Defendant was arrested in January 2020 for unlawful possession of a firearm inside a hallway of the Development. *Id.* ¶ 18. While incarcerated, Defendant made a recorded call to co-defendant Devonne McDonald Jones[2] during which he expressed his frustration with the younger members/recruits for failing to act as good lookouts and alert Defendant to the presence of law enforcement. *Id.* Relatedly, during a subsequent recorded jail call in 2020, Defendant, McDonald-Jones, and leading member and co-defendant Jaquori Lyons

[2] McDonald-Jones pleaded guilty to RICO conspiracy on July 22, 2025 and was later sentenced to 84 months followed by 3 years of supervised release. Dkts. 372, 465.

discussed that Defendant had seven new recruits for the gang. *Id.* ¶ 17. Indeed, several days later, Defendant confirmed to Lyons that he had "grabbed this little ***** [who] just left [another gang]." *Id.*

Of course, the Heath Street Gang's activities have also severely impacted the broader public and other areas of Boston as well as surrounding communities, as longstanding conflicts with rival gangs have resulted in Heath Street Gang members/associates' commission of numerous murders and shootings. *See id.* ¶¶ 13, 20. Heath Street Gang members use social media postings and music/lyrics to actively promote the gang and assert and gang membership, brag about acts of violence committed by the gang, and denigrate and threaten rival gangs, often driving and escalating violent conflicts in so doing. *See id.* ¶ 11. Defendant, one of the main rappers for the gang, is a prime example. *Id.* ¶ 36. For instance, in a video released in February 2021 for a song titled "Big G34," Defendant boasted about committing acts of violence, that he frequently carries a gun, and that one might find four firearms in his car: "We spin blocks and shoot up the door, brand new Glock [firearm] it's goin on tour, search my whip we have like 4 and it's on my hip when we walk to the store."[3] He then explicitly detailed entering the territory of two rival gangs, Mission Hill and Orchard Park, shooting firearms at anyone encountered, and specifically noting the involvement of a younger recruit in such: "We slidin through the hill [Mission Hill], f*** it, whoever we catch, up it" and "Pull up in OP [Orchard Park] and air it, shoot anybody that's starin, lil bro [young recruit] in the back with a matic [semiautomatic

[3] Trottie Moula Ft. Trottie Drilla BDE Keko & Trottie Y Gizzle, "Big G34," *available at* https://www.youtube.com/watch?v=st9mpsq7B1Y.

firearm], the f*** he on not caring." Immediately after that line, the video shows Defendant brandishing a firearm:[4]



In another music video published in October 2020 by Defendant and co-defendant Rickquille McKinney a/k/a Ricky Mazarati, Defendant is shown wearing gang-related clothing, holding a firearm, and sitting next to six additional firearms, a box of ammunition, and U.S. currency; he later appears brandishing two firearms at once:[5]



---

[4] *Id.*

[5] Trottie Moula Ft. Ricky Mazarati, "Outta Line," *available at* https://www.youtube.com/watch?v=gYgU9CAglSk.



These claims and threats of violence, and the numerous firearms displayed in the gang's videos, are not simply fantasy or art; they are supported by facts and real events. In addition to the years-long chain of extensive retaliatory violence between the Heath Street Gang and rival gangs including murders and shootings, *see* Detention Affidavit ¶¶ 25-45 (Dkt. 64-1), for example, in November 2020, law enforcement, while monitoring a Heath Street Gang music video shoot, recovered six fully operable firearms from members/associates. PSR ¶ 14 n.4. Recovered footage from the shoot, revealed that Heath Street Gang members/associates possessed firearms within the Development prior to law enforcement's interruption thereof. *Id*. As a result, Defendant and several other Heath Street Gang members/associates were indicted for firearms offenses. *Id.* Defendant not only participated in such dangerous conduct but directed it. For example, in January 2020, while incarcerated in connection with the above-detailed arrest for unlawfully possessing a firearm within the Development hallways, Defendant, during recorded calls with Lyons and McDonald-Jones, sought to sanction co-defendant Keyon Roberson[6] for making degrading comments about older gang members not being violent enough and demanded that

[6] Roberson pleaded guilty to RICO conspiracy on April 10, 2025 and was later sentenced to 77 months followed by 3 years of supervised release. Dkts.321, 389.

Roberson be prohibited from returning to the gang until he completed a successful shooting. Det. Aff. ¶ 15.

***b. Financial Crimes***

In addition, Defendant and co-defendant McKinney devised and executed a scheme to defraud the Massachusetts Department of Unemployment Assistance ("DUA") to further the gang's criminal activities, ultimately causing a loss of over $600,000 to DUA.

In early 2020, as the COVID-19 pandemic disrupted everyday life, causing illness, death and economic distress, the U.S. government assembled relief programs to help those whose livelihoods were jeopardized. PSR ¶ 42. Congress enacted the Coronavirus Aid, Relief, and Economic Security ("CARES") Act in March 2020 to provide emergency financial assistance to Americans suffering the pandemic's economic effects. *Id.*

One emergency relief program authorized by the CARES Act was the Pandemic Unemployment Assistance ("PUA") program, a temporary federal unemployment insurance program. *Id.* Applicants could submit PUA claims to state agencies that administered the PUA program in their respective states. Here in Massachusetts, the Massachusetts Department of Unemployment Assistance ("DUA") administered and managed the PUA program. *Id.* ¶ 43. Claimants were additionally required to submit weekly certifications indicating if the claimant had worked and/or received any income during the identified week. *Id.* ¶ 44. Starting around March 2021, an extension reiteration of the CARES Act required states to confirm or obtain proof from PUA claimants that they had an attachment to the labor market to prove that they were, in fact, entitled to PUA. *Id.* ¶ 45 n.18. MA DUA alerted claimants of such via an "employment substantiation issue," in response to which claimants had to provide appropriate documentation in order to continue receiving monies. *Id.*

Defendant treated the PUA program as a pool of money from which to brazenly steal and facilitate the gang's criminal activities through the submission and selling of fraudulent employment substantiation letters from Married 2 The Mop Cleaning LLC ("M2M"), a company created by McKinney in September 2020. *Id.* ¶ 45-53. Defendant not only used M2M to purportedly substantiate his own personal fraudulent PUA claim, in connection with which he received over $40,000, but also, together with McKinney, generated, provided, and sold fraudulent letters to Heath Street Gang members/associates and others, ultimately causing the disbursement of approximately $627,111 in fraudulently-obtained benefits to PUA claimants.[7] *See id.* Consistent with his modus operandi of blatantly flouting the law and openly bragging about such, in a song published in February 2021, Defendant boasted about his actions: "I bought a hundred guns with this PUA."[8] *Id.* ¶ 46.

Defendant submitted his own fraudulent PUA claim in April 2020. *Id.* ¶ 52. In addition to purportedly basing his unemployment assistance eligibility on his attachment to the labor market through M2M and submitting a fraudulent M2M letter in attempt to satisfy the employment substantiation requirement,[9] Defendant made other blatantly false and fraudulent statements to

---

[7] The investigation identified numerous additional claimants who submitted nearly identical M2M employment substantiation letters; together with those noted above, PUA claimants who submitted M2M letters received a total of over $917,000. *See* Def. Aff. ¶ 58.

[8] Trottie Moula Ft. Trottie Drilla BDE Keko & Trottie Y Gizzle, "Big G34," *available at* https://www.youtube.com/watch?v=st9mpsq7B1Y

[9] The letter (which was nearly identical to the numerous other M2M letters submitted to MA DUA identified during the investigation) stated that Defendant was to start employment with M2M, but that M2M was no longer able to hire "her" due to COVID. PSR ¶ 52. The letter did not specify any purported start date, job description/title, or salary. *Id.* MA DUA determined this documentation insufficient and denied the claim, thereby ending payments to Defendant. *Id.*

MA DUA. *See id.* For example, Defendant submitted several certifications that he was able and available to work during weeks when in fact Defendant was incarcerated during those times. *See id.* Moreover, directly contradicting both his purported basis for his claim and the statement in the M2M letter submitted to MA DUA that M2M could not hire Defendant due to COVID, in August 2021, apparently in connection with an open court case, Defendant and McKinney worked to generate another fraudulent M2M letter alleging that Defendant *had* worked for M2M since April 2020.[10] *Id.* As noted above, according to Commonwealth of Massachusetts records, M2M was not even organized in the state of Massachusetts until September 2020. *See id.* ¶ 45.

In numerous recorded jail calls with other Heath Street Gang members/associates, Defendant discussed engaging in PUA fraud and instructed them how to do so. *Id.* ¶ 47. For example, Defendant complained to Lyons that  co-defendant Tyrre Herring,[11] who Defendant stated was receiving PUA fraud money through the gang, was not properly using the funds and was embarrassing the gang. *Id.* ¶ 48. Additionally, Defendant told another gang member/assocaite that Defendant was coordinating collecting money for the individual's bail, and that Defendant would help the individual's family obtain PUA funds to do so. *Id.* ¶ 50.

Not only that, but Defendant used M2M to provide cover for claims of legitimate employment for himself and other Heath Street Gang members/associates, including co-defendants Lyons and Michael Riley.[12] *See id.* ¶ 49. Specifically, in a September 2020 recorded

---

[10] Defendant asked McKinney: "the lawyer said can you put a recent date on this . . . I got court tomorrow" and then sent the requested language. PSR ¶ 52 n.24. McKinney then sent Defendant a letter with that exact language, Defendant confirmed he sent it to his lawyer. *Id.*

[11] Herring pleaded guilty to RICO conspiracy on June 11, 2025. Dkt. 567.

[12] Riley pleaded guilty to RICO conspiracy on March 5, 2026. Dkt. 495.

jail call, Defendant and Lyons, who was then incarcerated, discussed Defendant helping Lyons obtain M2M paperwork falsely documenting that Lyons was employed with M2M so that Lyons could seek to be released on bond. *Id.* Similarly, when Riley was arrested in late 2023 on federal firearms charges, Riley falsely informed the United States Magistrate Judge that he had been employed by M2M for several years. *Id.*

Moreover, starting around June 2021, Defendant and McKinney began selling these fraudulent M2M employment substantiation letters for $200 to third parties and instructing them how to submit the PUA claims, with Defendant leading the charge. *Id* ¶ 50. For example, on June 18, 2021, Defendant texted McKinney that several people were seeking "the letter" and wrote: "ima do it on my computer and send the bread [money] through paypal." *Id.* ¶ 51. McKinney responded: "I gotta send you the file to be able to edit it." *Id.* Defendant wrote: "google doc is letting me copy and paste mines…But send yours over that might be easier." *Id.* Numerous subsequent electronic communications show conversations between Defendant and various individuals discussing the M2M letter, Defendant providing the letters upon payment, and Defendant instructing the individuals how to submit them. *Id.*

In addition to his extensive PUA fraud scheme, Defendant engaged in other financial fraud to further gang activity. For example, in November 2021, Defendant obtained and used a victim's credit card information to make numerous attempted and successful purchases totaling approximately $4,000, and provided the information to McKinney and others who, per electronic communications, did the same. *Id.* ¶ 55. Defendant openly discussed how he would use these fraud proceeds to provide bail money to fellow members, telling Roberson in April 2019 that he would contribute money for Roberson's bail once Defendant had committed credit card fraud ("I just got . . . card… I'm trying to bust that right now…I'll throw something down…I hit the

n**** with the card s***") and reassuring Lyons in August 2019 that Defendant would provide bail money through his scheme ("You going to be straight. I'm about to get this card stuff…I'm smacking two cards this week"). *Id.* ¶¶ 57-58. Defendant similarly openly boasted about committing this financial fraud, bragging in a music video released in October 2020 while brandishing a firearm: "No job, I'm still cracking Santanders."[13]

## II. ADVISORY SENTENCING GUIDELINES

As set forth in the PSR, Defendant's total offense level under the Sentencing Guidelines is 18, because, among other things, the $631,111 loss caused by Defendant was between $550,000 and $1,500,000, and Defendant has accepted responsibility for his offense. *See id.* ¶¶ 64-91. With a criminal history category IV, Defendant's Guidelines are 41 to 51 months. *See id.* at 38.

## III. SENTENCING FACTORS

Consideration of the factors set forth in 18 U.S.C. § 3553(a) demonstrates that a sentence of 46 months' imprisonment followed by three years of supervised release with a specific condition prohibiting Defendant from entering the geographic area of the Development is sufficient, but not greater than necessary, to accomplish the goals of sentencing.

### a. Nature and Seriousness of the Offense

During a national catastrophe when the federal government and lenders were racing to get money out to eligible individuals who needed the money to survive, Defendant took advantage of the program by stealing. He made up false information and submitted fraudulent documents to receive government funds. Importantly, his crime was not a momentary lapse in

[13] Trottie Moula, "Fed Up," *available at* https://www.youtube.com/watch?v=Jh_Wl1QCZsk&list=RDJh_Wl1QCZsk&start_radio=1.

judgment. He did not submit just one false application to receive money that he did not deserve. Rather, he and co-defendant McKinney executed a complex scheme to defraud the PUA program at scale time and time again to profit therefrom and facilitate the gang's criminal activities. The nature of his conduct alone underscores his greed and callousness, let alone his contemporaneous public boasting about the firearms he purchased with the fraudulently obtained funds. Defendant viewed the PUA program simply as a pool of money from which to brazenly steal in order to further the gang's modus operandi.

Additionally, Defendant's actions in recruiting younger individuals starkly demonstrate how the older gang members drew in juveniles into a life of crime and encouraged them to commit brazen acts of violence on behalf of the Heath Street Gang. This type of group support for criminal activity allowed the Heath Street Gang to metastasize in the community, especially in the Development. Heath Street Gang members/associates were empowered to commit crimes *because* they supported each other through their criminal organization.

**b. History and Characteristics of the Defendant and Need for Deterrence**

Defendant's extensive criminal history demonstrates that he remains undeterred, if not emboldened, by his prior convictions and encounters with the criminal justice system to date. *See* PSR ¶¶ 93-117. All three of Defendant's prior convictions are for extremely dangerous conduct: in 2014, an assault and battery with a dangerous weapon (handgun); two years later, in 2016, another assault and battery with a dangerous weapon (automobile); and in 2022, felon in possession of a firearm.[14] *See id.* ¶¶ 94-96. Defendant also has a juvenile delinquency for

[14] This charge was based on Defendant's November 24, 2021 Snapchat posting of a video brandishing a semi-automatic firearm with an extended magazine in the area of the South Shore Plaza in Braintree per the GPS bracelet Defendant was wearing at the time. *See United States v.*

discharging a firearm within 500 feet of a building. *Id.* ¶ 93. Moreover, Defendant has three pending unlawful possession of a firearm and/or ammunition cases in Suffolk Superior Court. *See id.* ¶¶ 100-102.

It was in the face of this criminal history that Defendant engaged in the dangerous and brazen criminal conduct detailed herein.[15] Defendant has repeatedly posed a danger to the community, shown a complete disregard for the safety of others and the rule of law, and has demonstrated an unwillingness to comply with court-ordered conditions. Put simply, Defendant has shown an abject indifference to any criminal justice obligations and has been undeterred by his prior convictions. The sentence here must send a clear deterrent message to Defendant.

The government's recommended sentence is also appropriate to provide general deterrence. As the pandemic spread, so too did fraud related to the CARES Act programs and other programs designed to provide critical economic assistance. Actors like Defendant who defraud these programs not only drain them of limited funding; they also make it more difficult to get aid to individuals who actually qualify for relief and they risk shattering public confidence in the viability of these emergency relief programs. A 46-month sentence will serve as a warning and deterrent to others inclined to exploit similar relief programs in the future. It will illustrate that relief programs are not designed to be cash grabs and that the receipt of relief funds is not a right, but a privilege afforded to those who qualify based on true and accurate information.

---

*Trevon Bell*, 1:22-CR-10016-FDS. On June 7, 2024, Defendant was sentenced to 78 months' imprisonment and three years of supervised release. *See id.*

[15] While incarcerated in connection with his other federal case, Defendant continued to actively participate in the gang's racketeering enterprise, resulting in Probation's conclusion that Defendant was not entitled to a reduction for acceptance of responsibility. *See Bell*, 1:22-CR-10016-FDS, Dkt. 250 (Sentencing Memorandum).

More broadly, a significant sentence is needed to make clear to others tempted to join and support criminal gangs that such conduct will be severely punished. Gangs like the Heath Street Gang cannot be allowed to thrive, as their existence inherently threatens the safety of the public. The community should not be held hostage to the threats, violence, and financial fraud of gang members/associates like Defendant and his Heath Street Gang cohorts.

## CONCLUSION

For all of the foregoing reasons, and in light of the advisory guidelines, the factors enumerated in 18 U.S.C. § 3553(a), and the reasons to be offered at sentencing, the government recommends that the Court impose a sentence of 46 months' imprisonment followed by three years of supervised release.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By: */s/ Sarah B. Hoefle*
Michael J. Crowley
Sarah B. Hoefle
Assistant United States Attorneys

Dated: September 3, 2026

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Sarah B. Hoefle*
Sarah B. Hoefle
Assistant United States Attorney

Date: September 3, 2026